```
             IN THE UNITED STATES BANKRUPTCY COURT

              FOR THE SOUTHERN DISTRICT OF TEXAS

                       GALVESTON DIVISION

                                )
IN RE                           )
                                )
CHARLES R. KEMPER and           )   CASE NO. 04-82663-G3-7
LAWANA L. KEMPER,               )
                                )
        Debtors,                )
                                )
```

MEMORANDUM OPINION

The court has held a hearing on the "Motion of Litton Loan Servicing, L.P. for Further Relief from Stay and Waiver of 30 Day Requirement" (Docket No. 40). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered conditioning the automatic stay. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Charles R. Kemper and Lawana L. Kemper ("Debtors") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on December 7, 2004. The case was converted to Chapter 7 on Debtors' motion by order entered July 7, 2005 (Docket No. 37).

On June 15, 1999, Aldo El Sharif and Lisa El Sharif executed a 30 year note payable to Indymac Mortgage Holdings, Inc., and a deed of trust, with respect to property located at

3515 Bayshore Drive, Baycliff, Texas 77518.  (Litton Exhibits 4, 7).

Prior to February 1, 2003, the El Sharif loan was serviced by Washington Mutual.  On January 15, 2003, Washington Mutual sent to the El Sharifs a notice that, effective February 1, 2003, the loan would be serviced by Litton Loan Servicing, L.P. ("Litton") (Litton Exhibit 22).

Christopher Verheyen, a senior asset recovery specialist at Washington Mutual, testified that, as of December, 2002, the El Sharifs were delinquent on the note.  He testified that Washington Mutual was aware that the El Sharifs were attempting to sell the property.  He testified that, on January 15, 2003, David Sandoval, who then worked for Washington Mutual, agreed to a "30 day repayment agreement in which the mortgagor was to pay $4,000 on the 16th, which was the day after, and and additional $9,443.64 by February 16th."  (Tr. 10/18/2005, at p. 23).

On or about February 8, 2003, Debtors entered into a transaction with the El Sharifs, at a Washington Mutual branch. Several persons testified as to the activities that took place on February 8, 2003, and their testimony suggests that one or more of the parties misunderstood the transaction.  The El Sharifs executed a contract for deed, to transfer title to Debtors upon

2

the completion of specified payments.[1]

The contract for deed was notarized by Daniel Wheeler. Wheeler testified that, on February 8, 2003, he was a senior officer at the Washington Mutual branch where the contract for deed was executed. Wheeler testified that he notarized both a contract for deed and a general warranty deed. Wheeler testified that, on February 8, 2003, he acted only as a notary, and did not act to authorize an assumption of the El Sharifs' loan by Debtors. Lawana Kemper testified that she believed that Wheeler was acting as an agent of Washington Mutual, and that the transaction which took place was Debtors' assumption of the El Sharifs' loan.

On August 29, 2003, the El Sharifs filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On October 31, 2003, Litton filed a motion for relief from stay in the El Sharif case. (Docket No. 22, Case No. 03-42295-H1-11). By order entered November 17, 2003, the stay was lifted in the El Sharif case. (Docket No. 26, Case No. 03-42295-H1-11).

Debtors paid $4,000 to Washington Mutual during January, 2003, and $13,721.22 to Litton during April, 2003. Debtors made a payment of $2,132.87 to Litton during May, 2003.

---

[1] The Contract for Deed appears to contemplate that payments could be made either to the El Sharifs or to the underlying note holder. Lawana Kemper testified that Debtors made no payments to the El Sharifs, and directed all payments to either Washington Mutual or Litton.

3

(Debtors' Exhibit 5).

Lawana Kemper testified that, after May, 2003, Litton refused payments, and she became aware that, rather than returning payments to Debtors, Litton was sending Debtors' payments to the El Sharifs. She testified that Debtors have made no payments since 2003.

During April, 2004, counsel for Litton conducted a foreclosure sale of the property. Laurie Kotasek, a paralegal in the office of Litton's counsel, testified that, prior to the conduct of the first foreclosure sale, Litton determined that notice had not been given to Debtors, but only to the El Sharifs.

On June 14, 2004, counsel for Litton gave notice of a second foreclosure sale, to take place on July 6. 2004. The notice was addressed to the El Sharifs, and was mailed to them at the address they had listed in their Chapter 11 case, and at the property address. (Litton Exhibit 8). A separate notice was addressed to Debtors at the property address. (Litton Exhibit 9).

On July 6, 2004, a substitute trustee conducted a foreclosure sale of the property to State Street Bank & Trust Co., as trustee, and recorded a substitute trustee's deed. (Litton Exhibit 14).

Debtors contested the foreclosure, and on July 29, 2004, Litton filed suit against Debtors, in the 405th Judicial

District Court of Galveston, Texas, seeking a declaratory judgment that the foreclosure was valid.  (Debtors' Exhibit 2).

On December 23, 2004, sixteen days after the date of filing of the Debtors' Chapter 13 petition, Litton filed its first motion for relief from stay in the instant case, seeking to evict Debtors from the property.  Although Litton's declaratory judgment action was pending in the 405th Judicial District Court, Litton's first motion for relief from stay did not disclose that the state court suit was pending.

After a contested hearing held on March 9, 2005, the court lifted the stay for the limited purpose of permitting the parties to go forward to litigate in state court as to whether the foreclosure was valid.  The court did not lift the stay to permit eviction at that time.  (Docket No. 28).

On June 23, 2005, Litton filed a motion seeking, <u>inter alia</u>, monthly mortgage installment payments as adequate protection of its interest, pending resolution of the underlying state court case.  (Docket No. 32).

On July 7, 2005, Debtors filed a motion to convert the instant case from Chapter 13 to Chapter 7.  (Docket No. 35).  The motion was granted, by order entered July 7, 2005.  (Docket No. 37).

On August 3, 2005, Litton filed the instant motion, its second motion for relief from stay.  In the instant motion,

Litton again seeks lifting of stay in order to evict Debtors from the property, pending the determination of the state court. Litton asserts cause for lifting of the automatic stay, based on the changed circumstances which caused Debtors' conversion of the instant case to Chapter 7, the apparent inability of Debtors to fund their Chapter 13 plan prior to conversion, and the passage of additional time with Debtors resident in the property without making any payment to Litton.

After the commencement of the hearing on the instant motion, Debtors filed a motion to dismiss the instant Chapter 7 case.  The motion to dismiss is opposed by Litton.  This court has previously announced that a hearing will be commenced regarding the motion to dismiss after the court rules on the instant motion.

## Conclusions of Law

Section 362(d) of the Bankruptcy Code provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if--

>   (A) the debtor does not have an equity in such property;  and
>
>   (B) such property is not necessary to an effective reorganization;  or

11 U.S.C. § 362(d).

In a hearing on a motion for relief from the stay, the party seeking relief has the burden of proof on the issue of debtor's equity in the property.  The party opposing relief has the burden of proof on all other issues.  11 U.S.C. § 362(g).

Whether cause exists for lifting of the stay must be determined on a case-by-case basis, based on an examination of the totality of circumstances.  In re Trident Assoc. L.P., 52 F.3d 127 (6th Cir. 1995); Claughton v. Mixson, 33 F.3d 4 (4th Cir. 1994); In re Tucson Estates, Inc., 912 F.2d 1162 (9th Cir. 1990).

Section 361 of the Bankruptcy Code provides in pertinent part:

>   When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by -
>
>   (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
>   (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease

7

>       in the value of such entity's interest in such property; or
>
>       (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property

11 U.S.C. § 361.

In the instant case, it is clear that, in the absence of some payment, the interest of Litton (or its assignee, State Street Bank & Trust Co., as Trustee) in the property is not adequately protected. The court notes that the regular monthly payment amount was initially designed to amortize the note over a term of 30 years. Although it appears that the note, if still in effect, is in arrears by more than one year, the court finds that adequate protection requires that Debtors pay to Litton, the sum of $2,132.87 per month, on or before the 20th day of each month, beginning on January 20, 2006. These payments are to be escrowed pending resolution of the underlying dispute in state court.[2]

Based on the foregoing, a separate Judgment will be entered conditioning the automatic stay on Debtors' payment to Litton, the sum of $2,132.87 per month, on or before the 20th day

---

[2] The court notes, however, that intervening events, such as entry of discharge or dismissal, may result in the lifting of the stay, notwithstanding entry of the Judgment in connection with the instant Memorandum Opinion.

of each month, beginning on January 20, 2006.

Signed at Houston, Texas on January 9, 2006.

*[signature]*

HONORABLE LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE