IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | |
| CHARLES KEMPER and ) | CASE NO. 04-82663-G3-7 |
| LAWANA KEMPER, ) | |
| ) | |
| Debtors, ) | |
| ) | |

<u>MEMORANDUM OPINION</u>

The court has held a hearing on the Motion to Dismiss (Docket No. 75) filed by the Debtors in the above captioned case. The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered dismissing the above captioned case with prejudice to refiling. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Charles R. Kemper and Lawana L. Kemper ("Debtors") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on December 7, 2004.

On July 6, 2004, a substitute trustee appointed by Litton Loan Servicing, LP ("Litton") conducted a foreclosure sale of Debtors' interest in real property located at 3515 Bayshore Dr., Bacliff, Texas (the "Bayshore Property"), purportedly selling the property to State Street Bank & Trust Co., as

trustee.  (See Docket No. 92).

On July 29, 2004, Litton filed suit against Debtors, in the 405th Judicial District Court of Galveston, Texas, seeking a declaratory judgment that the foreclosure sale was valid.  (See Docket No. 92).

On December 23, 2004, Litton filed a motion for relief from stay in the bankruptcy court, asserting that Debtors lacked an interest in the Bayshore Property as the result of a prepetition foreclosure, and seeking to evict Debtors from the Bayshore Property.  (Docket No. 7).

Debtors filed their first set of schedules of assets and liabilities in the instant bankruptcy case on December 28, 2004.  In those schedules, Debtors listed a fee simple ownership interest in the Bayshore Property, subject to a secured claim of State Street Bank in the amount of $345,000.  (Docket No. 8).

Lawana Kemper testified at the hearing on the instant motion that, in November, 2003, Debtors recorded a mechanic's lien in favor of themselves against the Bayshore Property, in the amount of $155,000.  Debtors failed to list their interest under the purported mechanic's lien in the schedules.

In the original schedules, Debtors listed an unsecured priority debt owed to the Internal Revenue Service ("IRS") in an unknown amount, for tax years 1998, 1999, and 2000.  (Docket No. 8).

On January 27, 2005, the IRS filed a proof of claim, asserting a claim in the amount of $2,275,688.79, of which IRS asserted $844,655.64 was entitled to priority.

Lawana Kemper testified that, on the date the instant case was filed, Debtors had not filed tax returns since 1996. She testified that, in January, 2005, Debtors filed tax returns for 1996 through 2004 showing that approximately $38,000 was owed in taxes.

Debtors never amended their schedules to reflect either the amount of the IRS proof of claim or the amount they asserted was owed to IRS. Debtors never objected to the IRS claim.

Debtors' first meeting of creditors was set for February 16, 2005. Debtors failed to appear at the first meeting. The meeting was reset to April 25, 2005. Debtors failed to appear at that meeting.

The Chapter 13 Trustee filed a motion to dismiss the instant case, based on Debtors' failure to appear for two settings of the meeting of creditors. (Docket No. 17). Debtors filed a response to the motion to dismiss, stating that they had decided to convert the instant case to Chapter 7. (Docket No. 20). Despite this announcement, the Chapter 13 Trustee withdrew the motion to dismiss, and Debtors appeared at a meeting of creditors in the Chapter 13 case on June 6, 2005.

On June 8, 2005, the Chapter 13 Trustee filed a second motion to dismiss the instant case, on grounds Debtors' plan failed to provide for full payment of the secured and priority claims, Debtors exceeded the debt limits and thus were ineligible for relief under Chapter 13, and Debtors had caused unreasonable delay that was prejudicial to creditors.

Debtors first opposed the motion to dismiss (Docket No. 27), and then, prior to the hearing on the Chapter 13 Trustee's motion to dismiss, Debtors filed a motion to convert the instant case to Chapter 7.  The case was converted by order entered July 7, 2005 (Docket No. 37).

After conversion of the case, Litton filed a second motion for relief from stay, seeking to evict Debtors, even though suit remained pending in state court to determine whether Litton's prepetition foreclosure was valid.  (Docket No. 40).

Litton's second motion for relief from stay was set for a final hearing commencing on October 18, 2005.  Before the conclusion of the hearing on Litton's second motion, Debtors filed the instant motion, seeking dismissal of the instant case.

On January 9, 2006, the court entered a Memorandum Opinion and a Judgment, conditioning the stay as to Litton on Debtors' future regular monthly payments to Litton, to be held in escrow pending final resolution of the dispute as to ownership of the Bayshore Property.  (Docket Nos. 91, 92).

Lawana Kemper testified that Debtors have made all the payments called for under the court's Judgment.

On September 12, 2005, Debtors counterclaimed in the state court suit against Litton, Washington Mutual Bank (the servicer of the note prior to Litton's servicing), and State Street Bank. (Litton Exhibit 18).

On November 8, 2005, Litton moved for summary judgment, asserting that the Chapter 7 Trustee owned the cause of action asserted by Debtors in the counterclaim, and thus Debtors lacked standing to bring the counterclaim. (Litton Exhibit 19). Debtors responded, denying that the Trustee was the proper party in interest. (Litton Exhibit 20).

On April 21, 2006, Debtors amended their schedules, to reflect that they assert ownership of the causes of action asserted in the counterclaim, and claim those causes of action as exempt. The amended schedules omit any claim on behalf of IRS, and do not reflect a mechanic's lien claim against the Bayshore Property. (Docket No. 120).

In the instant motion, Debtors seek dismissal. Litton opposes the motion, asserting that Debtors have failed to show sufficient cause for dismissal.

Lawana Kemper testified that she believes Debtors will resolve their dispute with IRS, and will be able either to pay the remaining claims against them in full or reach a negotiated

resolution of those claims. She also testified that Debtors have several parties interested in purchasing the Bayshore Property. She testified that sale of the property will provide sufficient funds to pay the claims of all parties with an interest in the Bayshore Property.

Debtors have not filed a motion for authority to sell their interest in the Bayshore Property.

### Conclusions of Law

The instant case presents an atypical circumstance, in that it is Debtors who want the case dismissed, and a creditor who wants the case to remain in bankruptcy.

Section 707(a) of the Bankruptcy Code provides:

> (a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause including--
>
> > (1) unreasonable delay by the debtor that is prejudicial to creditors;
> >
> > (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> >
> > (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a).

Section 707(a) does not provide an exhaustive list of factors to be considered in determining whether good cause exists to dismiss a bankruptcy petition. Whether sufficient cause

6

exists for dismissal depends on the equitable considerations and the particular facts of the case.  The court must balance the equities and weigh the benefits and prejudices of dismissal.  Matter of Atlas Supply Corp., 857 F.2d 1061 (5th Cir. 1988).

This court has generally dismissed cases in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute.  (See e.g., In re Gamma Env. Services, Inc., Case No. 01-32689-H3-7 (Slip Op. July 18, 2001; In re Leslie, Case No. 98-35386-H3-11 (Slip Op. February 12, 1999), citing In re Mazzocone, 200 B.R. 568 (E.D. Pa. 1996); In re Ravick Corp., 106 B.R. 834 (Bankr. D.N.J. 1989); Argus Group 1700, Inc. v. Steinman (In re Argus Group 1700, Inc.), 206 B.R. 757 (E.D. Pa. 1997).).  This court has also dismissed one case on a Debtor's contested motion, where a creditor was attempting to gain an unfair advantage in a two party dispute by retaining the case in bankruptcy.  In re Laub, Case No. 97-40436-H3-11 (Slip Op. June 6, 1997).

In the instant case, nearly all the litigation has concerned the Debtors' attempt to retain the Bayshore Property and assert claims against the secured lenders related to the foreclosure of the Bayshore Property.  The Debtors have not demonstrated an interest in the legitimate process of bankruptcy, but rather are seeking a forum in which to resolve the dispute against the lenders.  Debtors have abused the bankruptcy process

by filing a Chapter 13 case for which they were not eligible, neglecting to accurately schedule the IRS claim and the purported mechanic's lien, and failing to cooperate in intervention by the Chapter 7 Trustee in the state court case.  The court concludes, based on the totality of the circumstances, that the above captioned case should be dismissed.  The court concludes that Debtors' actions in the instant case demonstrate that the case was filed in bad faith. The court concludes that Debtors failed to appear in proper prosecution of the case, in failing to file correct schedules, and in failing to appear for their meetings of creditors.  The court concludes that the dismissal of the instant case should be with prejudice to Debtors' filing of another case under Title 11 within 180 days of the date of entry of the Judgment dismissing the instant case.

     Based on the foregoing, a separate Judgment will be entered dismissing the above captioned case with prejudice to Debtors' filing of another case under Title 11 within 180 days of the date of entry of the Judgment dismissing the instant case.

     Signed at Houston, Texas on May 18, 2006.

                                                     _____
                                                   LETITIA Z. CLARK
                                                   UNITED STATES BANKRUPTCY JUDGE